

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-08-00008-CR
_____


EDWIN FRANKLIN WILLIAMS, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 173rd Judicial District Court
Henderson County, Texas
Trial Court No. C-14,513


Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

Charged with aggravated assault with a deadly weapon, Edwin Franklin Williams waived his right to a jury trial and pleaded guilty to the lesser-included offense of deadly conduct.[1] *See* TEX. PENAL CODE ANN. § 22.02 (Vernon Supp. 2008) (aggravated assault), § 22.05 (Vernon 2003) (deadly conduct); *Robertson v. State*, 245 S.W.3d 545, 546 (Tex. App.—Tyler 2007, pet. ref'd) (deadly conduct is lesser included offense of aggravated assault). The trial court assessed Williams' punishment at eight years' imprisonment. On appeal, Williams challenges the trial court's judgment by raising two issues. We overrule both contentions of error and affirm the trial court's judgment.

I.      **Involuntary Guilty Plea**

In one appellate issue, Williams contends the trial court erred by accepting his guilty plea because that plea was involuntary. Our law requires guilty pleas to be freely and voluntarily given by a defendant who is competent to stand trial. TEX. CODE CRIM. PROC. ANN. art. 26.13 (Vernon Supp. 2008).

During the plea colloquy, the following exchange occurred:

> THE COURT: On the record in Cause No. 14,513 and 14,514, the State of Texas and Defendant and Defense counsel has notified the Court that they wish to resolve this with a plea agreement.
>
> The plea -- with that agreement, the State is agreeing to abandon the enhancement paragraphs alleged in the indictment in Cause No. 14,513.

---

[1]This case has been transferred to this Court as part of the Texas Supreme Court's docket equalization program.

[The State:]  And there's two paragraphs in there.

THE COURT:  As well as, in the same Cause No. the State intends to abandon paragraph B, as alleged in the indictment, and go forward only on paragraph A.  As I understand it, paragraph A is a third-degree felony?

[The State:]  It's a second-degree felony.  We've agreed to reduce it.  We checked the box on the plea papers, reduced to deadly conduct, third-degree felony.

[Defense Counsel:]  I've got the plea papers, Your Honor.  The other thing is, it's only under one Cause No.  The other will be taken into consideration.

THE COURT:  Cause No. 14,514 will be taken into consideration?

[Defense Counsel:]  Correct.

THE COURT:  Very Well.

[To the defendant:]  Sir, if you will come forward.  You were sworn earlier, you understand that you're still under oath, do you not?

Mr. Williams:  Yes, sir.

THE COURT:  You're Edwin Franklin Williams?

Mr. Williams:  Yes, sir.

THE COURT: My understanding is that after consultation with your attorney and after receiving a new plea offer, that you have agreed to plead guilty to the lesser offense of deadly conduct, which is a third-degree felony.  It carries a range of punishment from two years incarceration in the Texas Department Correction to ten years, and up to a $10,000 fine.  Do you understand the range of punishment?

Mr. Williams:  Yes, sir.

THE COURT:  And did I state that correctly, that you're willing to plead guilty to that third-degree offense of deadly conduct?

3

Mr. Williams:  Yes, sir.

THE COURT:  And my understanding is that you wish to go to the Court, me, for punishment; is that correct?

Mr. Williams:  Yes, sir.

THE COURT:  And you waive the jury consideration of punishment?

Mr. Williams:  Yes, sir.

THE COURT:  All right.  Before I talk to you about -- let me show you the agreed plea recommendation sheet, sir.  It seems to have your signature on that; did you sign that?

Mr. Williams:  Yes, sir.

THE COURT:  And did you sign the back as well?

Mr. Williams:  Yes, sir.

THE COURT:  And did you have an opportunity to go over this with your attorney?

Mr. Williams:  Yes, sir.

THE COURT:  Did you have an opportunity to ask any questions about it?

Mr. Williams:  Uh, yes, sir.

THE COURT:  Do you feel that you understand all of your options?

Mr. Williams:  Fairly, yes.

THE COURT:  Okay.  When you say fairly, do you need additional time to discuss it with your attorney?

Mr. Williams:  No, I don't, I don't guess.

4

THE COURT:  Okay.  Let me say for the record, if you need additional time -- if you have any concerns --

Mr. Williams:  No, I'm just in a state of -- I don't know, you know.

THE COURT:  Well, you tell me.  I mean, I can't make the decision for you.  Would you like some additional time to talk to him about it?

Mr. Williams:  No, sir.

THE COURT:  Are you ready to go forward?

Mr. Williams:  Yes, sir.

THE COURT:  Are you sure of that?

Mr. Williams:  I'm sure.

THE COURT:  Okay.  All right.  On the front, sir, is -- well, actually, on the front of this agreed plea recommendation sheet is what you've been charged with, and it recites that the State is willing to reduce it to lesser included offense of deadly conduct.

On the back there are certain rights that you have, and did you go over those with your attorney as well?

Mr. Williams:  Yes, sir.

THE COURT:  And did you know by signing that, that you were waiving certain rights?

Mr. Williams:  No.

THE COURT:  Well, let me ask you this.  You know that there's a jury waiting to try this case?

Mr. Williams:  Yes, sir.

5

THE COURT: And you know that that jury would be called upon to consider whether or not you're guilty or innocent of the indicted charges; do you understand that?

Mr. Williams: Yes, sir.

THE COURT: Do you know that by agreeing to this, you're telling me you don't want a jury to consider whether or not you're guilty or innocent. In fact, you want to just simply plead guilty to the lesser included offense and have the others, what we call taken into consideration and dismissed.

Mr. Williams: Yes, sir.

THE COURT: Is that what you want to happen?

Mr. Williams: Yes, sir.

THE COURT: Okay. And you understand that nobody can make you waive that jury?

Mr. Williams: I didn't think they did.

THE COURT: Okay. You have to give it up.

Mr. Williams: I did give it up.

THE COURT: And are you giving it up voluntarily?

Mr. Williams: Yes, sir.

THE COURT: Are you doing so of your own free will?

Mr. Williams: Yes.

THE COURT: Is anybody forcing you to do this or making you do is [sic]?

Mr. Williams: Well, I didn't actually do no deadly weapon to them boys, that's the reason.

6

THE COURT:  It's a deadly conduct, not a deadly weapon.

Mr. Williams.  Yes, sir, I understand that.

THE COURT:  Okay.  Has anybody forced you to do this?

Mr. Williams:  No.

THE COURT:  Made you do it?

Mr. Williams:  No, sir.

THE COURT:  I mean, is this what you want to do?

Mr. Williams:  Yes, sir.

THE COURT:  Do you understand -- well, okay, sir.  Sir, to the charge, the lesser included offense of deadly conduct, in Cause No. 14,513, sir how do you plea[d], guilty or not guilty?

Mr. Williams:  Guilty.

THE COURT:  And are you pleading guilty because you are guilty and for no other reason?

Mr. Williams.  Right.

THE COURT:  Is that a yes?

Mr. Williams:  Yes.

THE COURT:  Has anybody forced you into pleading guilty, made you plead guilty?

7

Mr. Williams:  No.

THE COURT:  Talked you into it?

Mr. Williams:  No.

In addition to these oral warnings, Williams and his attorney signed an agreed plea recommendation form.  It is specifically noted in the agreement that the plea is an "open plea." Williams acknowledged that he and his attorney had read the document, that Williams understood it, and that he was freely, voluntarily, and intelligently entering the plea of guilty.  The agreement contains a judicial confession and a waiver of a jury trial.  The document confirms the agreement as presented orally to the trial court (charge reduced to deadly conduct, punishment range was two to ten years and $10,000.00 fine, another case considered, no recommendation as to punishment). Williams was admonished both orally and in writing; either method complied with Texas law.  *See* TEX. CODE CRIM. PROC. ANN. art. 26.13(d).

The record in this case shows Williams' guilty plea was accepted only after the trial court made certain Williams' guilty plea was free and voluntary rather than the product of coercion by or force from an outside influence.  Several weeks later, and now again on appeal, Williams claimed that his August guilty plea was involuntary and should not have been accepted by the trial court. However, the record of the plea proceeding does not support the conclusion that the trial court was accepting an involuntary guilty plea at the time Williams entered his plea.

## II.    Withdrawal of Guilty Plea

Williams also contends the trial court erred by denying his motion to withdraw his guilty plea. Once a trial court has accepted a defendant's guilty plea and taken the issue of sentencing under advisement, an accused's guilty plea may be withdrawn only if the trial court, acting within its discretion, permits such withdrawal. *Labib v. State*, 239 S.W.3d 322, 331 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

In this case, the trial court accepted Williams' plea August 14, 2007. The court then ordered the preparation of a presentence investigation (PSI) report, took the issue of punishment under advisement, and continued the case until September 17 for sentencing. At that September sentencing hearing, Williams expressed his desire to withdraw his guilty plea. The trial court took no action on Williams' plea withdrawal motion; instead, the court continued the case until September 19. When the hearing resumed, the trial court formally denied Williams' motion to withdraw his guilty plea and assessed his punishment at eight years' imprisonment.

Later, at a hearing on his motion for new trial, Williams testified he had believed the negotiated plea agreement called for a charge reduction *and* a sentence of community supervision. He held this (mistaken) belief despite acknowledging that the trial court had specifically warned him that the plea agreement called for an "open plea."

Trial judges have a solemn obligation to every defendant who comes before their courts to ensure that those accused of criminal wrongdoing appear before a fair, just, and impartial tribunal.

9

But trial judges also have the duty to the public to operate their courts in an efficient manner. Neither fairness nor efficiency may be accomplished if parties are permitted to engage in a protracted series of seemingly unwarranted delays.

The record shows that this case had been previously continued by the defense on numerous occasions. For the week beginning Monday, August 13, 2007, the trial court had specially set aside the entire week to try only Williams' case, time that could have been devoted to other pressing matters. Yet, when voir dire had been scheduled to begin that Tuesday (and with a jury waiting in the wings), Williams tried to (a) fire his court-appointed counsel, (b) obtain a continuance, and (c) seek permission from the trial court to hire new counsel (which was also denied based on the trial court's observation that Williams had been claiming for over a year that he was making efforts to hire new counsel but had never done so). The trial court then took a brief recess to permit Williams to discuss his impending trial with his attorney and to discuss a potential plea agreement with the prosecutor.

After this recess, the State and Williams informed the trial court that the parties had reached a negotiated plea agreement calling for Williams to plead guilty to the lesser included offense of deadly conduct and submit the issue of punishment to the trial court's discretion. The paperwork about the guilty plea clearly stated the issue of punishment was "open" to the discretion of the trial court.

During the plea hearing, the trial court provided Williams with multiple opportunities to withdraw his guilty plea, to claim that he did not understand the ramifications of his plea, and/or to seek additional explanations from his lawyer about the substance of the plea process. Williams took advantage of none of these opportunities. Thus, confident that Williams' plea was voluntary, the trial court accepted the plea, took the matter of punishment under advisement, and continued the case so that the PSI report could be prepared.

Yet, once the date arrived for formal sentencing, Williams was unwilling to accept the consequences of his guilty plea; instead, he wanted to start the process over anew. The trial court could have reasonably interpreted these actions as gamesmanship, requiring further delay.

Additionally, and in stark contrast to Williams' claims at the September sentencing hearing, Williams' earlier responses at the August plea hearing had clearly supported the belief that Williams understood the terms and consequences of his plea agreement, that his jury waiver was intelligent and voluntary, that Williams knew "there was no going back" once his plea was accepted by the trial court, and that Williams affirmatively knew his punishment would be assessed solely by the trial court. The trial court might have reasonably viewed this sudden change of heart with a great degree of skepticism regarding the depth of Williams' sincerity.

Given these various considerations, and given the wide range of discretion available to the trial court in deciding whether an accused should be permitted to withdraw his or her guilty plea, we cannot say the trial court's ruling fell outside the wide zone of reasonable disagreement.

11

**Conclusion**

Finding no error in the proceedings below, we affirm the trial court's judgment.

Jack Carter
Justice

Date Submitted:     August 11, 2008
Date Decided:       August 13, 2008

Publish